**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **AMY L. PAPESH, as Administrator of** | : | |
| **the ESTATE OF YUSUF A. EVANS, SR.** | : | **CASE  #** |
| | : | |
| **PLAINTIFF,** | : | **JUDGE:** |
| | : | |
| **v.** | : | |
| | : | |
| **FEDEX GROUND PACKAGE** | : | |
| **SYSTEM, INC.** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **AND** | : | **(OTHER TORTS)** |
| | : | |
| **FEDEX FREIGHT, INC.** | | |
| | | |
| **DEFENDANTS.** | | |

## COMPLAINT

AND NOW COMES the Plaintiff Amy L. Papesh, as Administrator of the Estate of Yusuf A. Evans, Sr., by and through her legal counsel to hereby complain against the Defendants, FedEx Ground Package System, Inc. and FedEx Freight, Inc., and in support thereof aver as follows:

## PARTIES

1.     Plaintiff, Amy L. Papesh, Esquire, is a competent adult individual with an office located at 6105 Parkland Boulevard, #200, Mayfield Heights, Ohio 44124.

2.     At all relevant times hereto, Ms. Papesh was the Administrator of the Estate of Yusuf A. Evans, Sr. ("Decedent").

1

3.     Prior to his death, Decedent was a competent adult individual who resided at 1058 Ackley Street, Akron, Ohio 44306.

4.     Defendant, FedEx Ground Package System, Inc. (hereinafter "FedEx Ground") is a corporation organized and existing under the laws of Delaware with a principal place of business at 1000 Fed Ex Drive, Coraopolis, Pennsylvania 15108.

5.     FedEx Ground's USDOT is listed as 265752.

6.     FedEx Ground's MC Number is listed as MC-179059.

7.     Defendant, FedEx Freight, Inc. (hereinafter "FedEx Freight") is a corporation organized and existing under the laws of Arkansas with a principal place of business at 2200 Forward Drive, Harrison, Arkansas 72601.

8.     FedEx Freight's USDOT is listed as 239039.

9.     FedEx Freight's MC Number is listed as MC-121805.

10.     At all times relevant hereto, Defendants were or should have been authorized interstate motor carrier authorized to transport goods in interstate commerce and in the State of Ohio pursuant to one or more permits issued by the Interstate Commerce Commission, or by the United States Department of Transportation ("USDOT"), or both. Accordingly, Defendants were subject to all state and federal laws, statutes regulations and industry standards governing the hiring of safe and qualified commercial drivers, the safe maintenance and operation of commercial motor vehicles, and the safe brokering of goods in interstate commerce, including without limitation the Ohio Motor Vehicle Code and the Federal Motor Carrier Safety Regulations ("FMCSR") subchapters A and B of Chapter III of the Code of Federal Regulations, Title 49 – Transportation.

11.     In order to obtain a DOT number, Defendants had to submit an OP-1 form containing a "Safety Certification", certifying to the Federal Motor Carrier Safety Administration

("FMCSA") that it has access to and is familiar with all applicable USDOT regulations relating to the safe operation of commercial motor vehicles and that it will comply with the FMCSRs at all times while operating a commercial motor vehicle in the United States.

12.     More specifically, each Form OP-1 submitted contained a "Safety Certification," certifying to the Federal Motor Carrier Safety Administration that, at a minimum, Defendants:

    a.  had and will have in place a system and an individual responsible for ensuring overall compliance with the FMCSRs;

    b.  can produce a copy of the FMCSRs;

    c.  had and will have in place a driver safety training/orientation program;

    d.  had and will have prepared and maintain an accident register;

    e.  is familiar with D.O.T. regulations governing driver qualifications and had and will have in place a system for overseeing driver qualifications requirements;

    f.  had and will have in place policies and procedures consistent with D.O.T. regulations governing driving and operational safety of motor vehicles, including drivers' hours of service and vehicle inspection, repair and maintenance;

    g.  is familiar with, and had and will have a system for complying with all USDOT regulations governing alcohol and controlled substances testing requirements; and

    h.  must comply with all pertinent Federal, State, local and tribunal statutory and regulatory requirements when operating within the United States.

13.     Representatives of Defendants swore under the penalty of perjury to comply with the above "Safety Certifications."

14.     At all times relevant hereto, Robin E. Adamson ("Ms. Adamson") was a Class A licensed motor vehicle operator driving a 2016 Kenworth with VIN number 1XKYA48X1GJ496380 (hereinafter "Kenworth"), which was owned, leased, assigned, and/or operated by Defendants.

15.     Accordingly, Ms. Adamson was subject to all state and federal laws, statutes, regulations and industry standards governing the safe maintenance and operation of commercial motor vehicles and tandem trailers including, without limitation, the Ohio Motor Vehicle Code and the FMCSRs set forth in 49 C.F.R. parts 350-398.

16.     At all times relevant hereto, the Kenworth was owned, leased, assigned, and/or operated by Defendants and was being operated and/or controlled by Ms. Adamson with the consent of Defendants for the financial benefit of Defendants.

17.     At all times relevant hereto, Ms. Adamson was employed and/or contracted to perform services for and was operating the Kenworth for Defendants, under Defendants' USDOT operating authority, and was subject to their supervision, control or right to control, such that Defendants should be considered his actual and statutory employer and therefore vicariously liable for Ms. Adamson's negligence and recklessness.

18.     At all relevant times hereto, Ms. Adamson was the agent, servant, workman, and/or employee of Defendants and was acting in the course and scope of her employment, under the direction, control, and authority these Defendants.

19.     At all relevant times hereto, Ms. Adamson was driving the Kenworth owned, leased, assigned, and/or operated by Defendants.

20.     At all relevant times hereto, Defendants acted as a single entity and operated and conducted business as a single entity transporting goods in interstate commerce.

21.     At all relevant times, Defendants were engaged in the joint undertaking of a particular transaction for mutual profit, mutual control, mutual contribution, and this joint undertaking was memorialized in contract.

22.     At all relevant times hereto, Defendants acted as a joint venture for transporting goods in interstate commerce.

23.     Accordingly, Defendants are personally liable, jointly and severally, in partnership, joint venture, or sole proprietorship for the tractor-trailer crash that caused Mr. Evans' catastrophic and fatal injuries.

24.     Defendants acted in a manner that either alone, combined, and/or occurring with the actions of other Defendants, directly and proximately caused the crash and the resulting fatal injuries suffered to Mr. Evans.

25.     At all relevant times hereto, the Defendants were liable for the actions and/or inactions of Ms. Adamson as though the actions and/or inactions were performed by the entities themselves.

26.     At all relevant times, the Federal Motor Carrier Safety Regulations apply hereto.

27.     At all relevant times, Defendants were subject to FMCSA Section 376.12 which pertains to leasing requirements.

28.     At all relevant times, Mr. Evans acted with due care and in no way caused or contributed to the crash that forms the basis of the lawsuit.

29.     Plaintiff seek damages for all harms and losses permissible under Ohio law, including, but not limited to, funeral and burial expenses,  profound psychological and emotional loss, conscious pain and suffering, and such other injuries, damages, and losses as described more fully and compensable at law under the Wrongful Death Act and Survival Act, and the decisional law of the State of Ohio interpreting those Acts, caused by the negligence and recklessness of the Defendants.

## JURISDICTION AND VENUE

30.      This Honorable Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because (a) there is complete diversity of citizenship between Plaintiff and the Defendants; and (b) the matter in controversy exceeds the jurisdictional limit.

31.      Venue is appropriate in this court pursuant to 28 U.S.C. §1391(b)(2) because the motor vehicle crash giving rise to this action occurred in Edinburg Township, Portage County, Ohio.

## OPERATIVE FACTS COMMON TO ALL COUNTS

32.      The preceding paragraphs are incorporated herein as though fully set forth below.

33.      On March 18, 2022, at or around 2:37 A.M., the vehicle operated by the Decedent caught on fire on the right shoulder of Interstate 76 (I-76) West.

34.      As the fire engulfed the vehicle, Decedent and his passengers ran across I-76 to the left shoulder – a safe distance from the burning vehicle.

35.      On March 18, 2022, at or around 2:37 A.M., Ms. Adamson was operating the Kenworth owned, leased, and/or assigned by Defendants.

36.      At this date and time, Ms. Adamson was operating the Kenworth on the same stretch of I-76, Edinburg Township, Ohio, as Decedent was located.  Suddenly and without warning, Ms. Adamson violently struck the Decedent.

37.      Yusuf A. Evans was pronounced dead at the scene by the Summit County Coroner.

38.      Due to the sheer velocity of the impact of the Kenworth operated by Ms. Adamson, Decedent was tragically killed.

39. At all relevant times hereto, Ms. Adamson operated the Kenworth in such a reckless, careless, and negligent manner, that she did not observe Decedent or the other passengers crossing the roadway ahead of her in the moments leading up to the crash.

40. As a result of the crash, as well as the negligence, carelessness, and recklessness of Defendants, the Estate of Yusuf A. Evans and Yusuf Evans prior to his death, has suffered and will continue to suffer substantial economic and non-economic injuries, damages and losses including, but not limited to:

    a.   Funeral and burial expenses;

    b.   Damage to the personal property of Yusuf Evans;

    c.   Profound psychological and emotional loss;

    d.   Conscious pain and suffering;

    e.   Loss of the comfort, care, and society of Yusuf A. Evans; and

    f.   Such other injuries, damages and losses described more fully herein and compensable at law under the Wrongful Death Statute, and the decisional law of the State of Ohio interpreting that statute.

41. At all relevant times hereto, Decedent acted in a safe, prudent, and reasonable manner and in no way contributed to the injuries or damages outlined herein.

42. Upon information and belief, at the time of the crash, Ms. Adamson was in violation of the FMCSR hours of service limits and consciously chose to operate the Kenworth in a fatigued condition.

43. Moreover, Defendants participated in, knew, or should have known that Ms. Adamson was operating over hours, driving while fatigued and otherwise operating the Kenworth in an unsafe, dangerous and reckless condition in violation of the FMCSR and Ohio law.

44.     At all relevant times, upon information and belief, Ms. Adamson's fatigued condition impaired her judgment, perception, and reaction to such an extent that she inexplicably drove the Kenworth into Decedent without braking.

45.     At all relevant times, upon information and belief, Ms. Adamson had an unsafe history of motor vehicle violations.

46.     At all relevant times, Defendants knew of Ms. Adamson's reckless and dangerous driving record and chose to hire her anyway.

47.     This information was known and/or readily available to Defendants before the Crash that fatally killed the Decedent.

48.     At all relevant times, upon information and belief, Defendants knew or should have known that Ms. Adamson had a propensity for violations of unsafe driving and speeding.

49.     At all relevant times, the FMCSA as part of its Safety Management System maintained a user-friendly website that was available to the public that tracks the registration, safety and compliance of all motor carriers that have a USDOT number, like Defendants. The FMCSA information also provided historical information and easy to understand of how to use the site and what each category of information and score means.  The FMCSA's online public information also listed the crashes and safety violations for the last 24 months.

50.     Defendants were aware of the FMCSA website.

51.     Moreover, despite Ms. Adamson's deplorable safety record, incompetence, and dangerous behavior, Defendants negligently, recklessly and with conscious disregard for the safety of the motoring public operated, selected, hired, retained, and/or assigned her to deliver goods to its customers using tractors and trailers.

52.     At all relevant times, Defendants exercised complete control over the dispatching of the Kenworth driven by Ms. Adamson at the time of the crash.

53.     At all relevant times, Defendants exercised complete control over the routing of the Kenworth driven by Ms. Adamson at the time of the crash.

54.     At all relevant times, Ms. Adamson failed to adjust her speed to match the conditions on the roadway ahead in violation of the Commercial Motor Vehicle Manual 2.6 – Controlling Speed.

## COUNT I

## WRONGFUL DEATH

## AMY L. PAPESH, AS ADMINISTRATOR OF THE ESTATE OF YUSUF A. EVANS, SR. v. FEDEX GROUND PACKAGE SYSTEM, INC. AND FEDEX FREIGHT, INC.

55.     The preceding paragraphs are incorporated herein as though fully set forth below.

56.     Plaintiff, Amy L. Papesh, as Administrator of the Estate of Yusuf A. Evans, Sr., deceased, brings this Wrongful Death Action on behalf of the Estate of Yusuf A. Evans, Sr., and by virtue of Ohio's Wrongful Death Statute, Ohio Rev. Code 2125.01, the applicable Rules of Civil Procedure and decisional law interpreting this statute.

57.     Under the Wrongful Death Statute, Yusuf A. Evans, deceased, left surviving his sole heirs-at-law, his children, Yusuf Evans, Char'Shun Johnson-Phillips, Y.E., minor son, N.H., minor daughter, S.G., minor daughter, J.E., minor daughter and Y.D., a minor daughter who reside at the following addresses:

   a.   Yusufa Evans (daughter), residing at 7047 Paxton Road, Youngstown, Ohio 44512;

   b.   Char'Shun Johnson-Phillips (son), residing at 1364 Buckeye Court, Youngstown, Ohio 44505;

   c.   Y.E., a minor (son) residing at 468 Wildwood Avenue, Akron, Ohio 44320;

9

d.   N.H., a minor (daughter) residing at 735 Lessig Avenue, Akron, Ohio 44312;

e.   S.G., a minor (daughter) residing at 183 Colony Crescent, Akron, Ohio 44305;

f.   J.E., a minor (daughter) residing at 345 W. Miller Street, Akron, Ohio 44301; and

g.   Y.D., a minor (daughter) residing at 418 Crestwood Avenue, #1, Akron, Ohio 44302.

58.     As a result of the negligent acts and omissions of Defendants, as described more fully herein, Plaintiff's Decedent, Yusuf A. Evans, Sr., suffered catastrophic, permanent and fatal injuries and death resulting in the entitlement to damages by the aforementioned beneficiaries under the Wrongful Death Act.

59.     Plaintiff, Amy L. Papesh, as Administrator of the Estate of Yusuf A. Evans, Sr., deceased, hereby claims the full measure of damages recoverable under and by virtue of the Wrongful Death Act and the decisional law interpreting the Act.

60.     Plaintiff, Amy L. Papesh, as Administrator of the Estate of Yusuf A. Evans, Sr., deceased, claims damages for the pecuniary losses suffered by reason of the death of Yusuf A. Evans, Sr., including but not limited to, damages to personal property, damages for all medical expenses, funeral and burial expenses, and the costs of estate administration necessitated by reason of the injuries which caused Yusuf A. Evans' death.

61.     Plaintiff Amy L. Papesh, as Administrator of the Estate of Yusuf A. Evans, Sr., deceased, claims damages for the loss of earnings, maintenance, support, comfort, care, society, attention, advice. counsel and/or other losses as specifically recognized under the Wrongful Death Statute and its Ohio case law progeny including profound psychological and emotional loss, which they would have received from the decedent had her death not occurred.

62.     Plaintiff, Amy L. Papesh, as Administrator of the Estate of Yusuf A. Evans, Sr., deceased, claims the loss of the pecuniary value of the services which the decedent could have

been expected to provide to the Wrongful Death beneficiaries during his lifetime had his death not occurred.

**WHEREFORE**, the Plaintiff, Yusuf A. Evans, Sr., as Administrator of the Estate of Yusuf A. Evans, Sr., hereby seeks damages from all Defendants in an amount in excess of the sum of $75,000.00 under the Wrongful Death Statute, exclusive of pre-judgement interest, post-judgement interest and costs.

**COUNT II**

**SURVIVAL ACTION**

**AMY L. PAPESH, AS ADMINISTRATOR OF THE ESTATE OF YUSUF A. EVANS, SR. v. FEDEX GROUND PACKAGE SYSTEM, INC. AND FEDEX FREIGHT, INC.**

63.     The preceding paragraphs are incorporated herein as though fully set forth below.

64.     Plaintiff, Amy L. Papesh as Administrator of the Estate of Yusuf A. Evans, Sr., brings this Survival Action on behalf of Yusuf A. Evans, Sr.

65.     As a result of the negligent acts and omissions of Defendants, as described more fully herein, Plaintiff's Decedent, Yusuf A. Evans, Sr. suffered catastrophic, permanent and fatal injuries prior to his death resulting in the entitlement to damages by the Estate of Yusuf A. Evans, Sr., in the form of a survival action.

66.     Plaintiff, Amy L. Papesh, as Administrator of the Estate of Yusuf A. Evans, Sr., deceased, claims the full measure of damages recoverable under and by virtue of this survival action and the decisional law interpreting such claims.

67.     On behalf of Decedent's Estate, Plaintiff claims damages for all economic losses to Yusuf A. Evans' Estate, as specifically recognized by this survival action and its Ohio case law progeny.

68.     On behalf of Decedent's estate, Plaintiff claims damages for the Decedent's physical discomfort, pain and suffering, loss of enjoyment of life and life's pleasures, and all other damages and losses recoverable specifically under this survival action and its Ohio case law progeny.

**WHEREFORE**, the Plaintiff, Amy L. Papesh, as Administrator of the Estate of Yusuf A. Evans, Sr., hereby seeks damages from all Defendants in an amount in excess of $75,000.00, exclusive of pre-judgement interest, post-judgement interest and costs.

<u>**COUNT III**</u>

<u>**NEGLIGENCE/RECKLESSNESS**</u>

<u>**AMY L. PAPESH, AS ADMINISTRATOR OF THE ESTATE OF YUSUF A. EVANS, SR. v. FEDEX GROUND PACKAGE SYSTEM, INC. AND FEDEX FREIGHT, INC. as being vicariously liable for ROBIN E. ADAMSON**</u>

69.     The preceding paragraphs are incorporated herein as though fully set forth below.

70.     The negligence, carelessness, and/or recklessness of Defendants, as being vicariously liable for the actions of Ms. Adamson consisted of, but are not limited to the following:

    a.  Failing to maintain proper and adequate control of her Kenworth;

    b.  Failing to keep her eyes on the road at all times;

    c.  Failing to pay proper attention while operating her Kenworth on I-76;

    d.  Failing to take proper precautions in the operation of her Kenworth so as to avoid the crash;

    e.  Operating her Kenworth in a negligent, careless and reckless manner without due regard to the rights and safety of the Decedent;

    f.  Failing to exercise due care and caution under all of the existing circumstances;

    g.  Failing to have her Kenworth under such control that it could be readily stopped, turned aside or the speed thereof slackened upon the appearance of danger;

h. Failing to remain alert;

i. Operating her Kenworth in a distracted manner;

j. Failing to reduce her speed in time to avoid crashing into the Decedent on I-76;

k. Traveling at an excessive rate of speed under the circumstances;

l. Violating the applicable rules, regulations, and laws pertaining to the safe and proper operation of motor vehicles and/or tractor trailers;

m. Failing to operate her Kenworth in accordance with the Federal Motor Carrier Safety Regulations;

n. Failing to properly control her Kenworth in light of the circumstances then and there existing, including traffic patterns existing on the roadway;

o. Failing to make necessary and reasonable observations while operating her Kenworth;

p. Failing to timely apply her brakes;

q. Violating FMCSA Regulation 383 dealing with required knowledge and skills;

r. Consciously choosing to drive at an unsafe speed given the circumstances;

s. Consciously refusing to reduce speed in response to traffic patterns then and there existing on the roadway;

t. Consciously choosing to disregard traffic patterns then and there existing on the roadway;

u. Consciously choosing to drive distracted;

v. Failing to perform a proper pre-trip inspection;

w. Violating both the written and unwritten policies, rules, guidelines and regulations of Defendants;

x. Failing to apprise herself of and/or abide by the Federal Motor Carrier Safety Regulations;

y. Failing to apprise herself of and/or abide by the regulations and laws pertaining to the operation of commercial vehicles;

13

z.   Failing to ensure the parts and accessories of the Kenworth were in good working order in violation of Section 392.7;

aa.  Failing to properly control her Kenworth unit in light of the circumstances then and there existing on the roadway;

bb.  Failing to make necessary and reasonable observations while operating the Kenworth;

cc.  Failing to take evasive action and/or failing to take appropriate and timely evasive action to avoid losing control of the Kenworth;

dd.  Violating Sections 383.110; 383.111; and 383.113 dealing with required knowledge and skill;

ee.  Violating Section 395.1 with respect to hours of service of drivers;

ff.  Making a conscious choice to drive in a fatigued condition knowing that driving in a fatigued condition impairs perception and judgment;

gg.  Failing to adhere to the amount of driving hours limit;

hh.  Causing the Crash due to being on the road more than the regulated number of hours;

ii.  Operating the Kenworth in an unsafe condition in violation of Section 396.7;

jj.  Failing to inspect the Kenworth before and during its operation in violation of Sections 396.9; 396.11; 396.13; and 396.17;

kk.  Recklessly failing to keep proper braking distance between her Kenworth and the Decedent in violation of the Uniform Commercial Driver's Manual;

ll.  Failing or consciously choosing not to follow the Uniform Commercial Driver's Manual as it relates to matching speed to road surface; and

mm.   Acting with a conscious disregard for the rights and safety of others, including the Plaintiff's Decedent.

71.   As a result of the above-stated acts and omissions, Plaintiff suffered such harm as has been previously stated herein.

**WHEREFORE** Plaintiff, hereby seeks all damages allowed under the laws of the State of Ohio, including punitive damages, in an amount in excess of $75,000.

**COUNT IV**

**NEGLIGENT and/or RECKLESS HIRING / SUPERVISION / RETENTION / "NEGLIGENT SELECTION" OF ROBIN E. ADAMSON**

**AMY L. PAPESH, AS ADMINISTRATOR OF THE ESTATE OF YUSUF A. EVANS, SR. v. FEDEX GROUND PACKAGE SYSTEM, INC. AND FEDEX FREIGHT, INC.**

72.     The preceding paragraphs are incorporated herein as though fully set forth below.

73.     Defendants had an obligation and duty to hire, retain and supervise drivers who operate their vehicles in a safe and prudent manner.

74.     "An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor (a) to do work which involves a risk of physical harm unless it is skillfully and carefully done, or (b) to perform any duty which the employer owes to third persons." See Rest. (Second) Torts § 411.

75.     Defendants had an obligation to exercise reasonable care in selecting a competent and careful driver to transport its goods in interstate commerce.

76.     The Decedent was seriously, tragically, permanently, and fatally injured as a result of the unsafe driving of Ms. Adamson.

77.     At all relevant times, Defendants were directly liable for the negligent and reckless hiring, supervision, retention and selection of Ms. Adamson.

78.     The negligence, carelessness, and/or recklessness of Defendants, in the hiring, supervision, retention and selection of Ms. Adamson, consisted of the following:

      a.   Failing to properly train, monitor, and/or supervise its employees, drivers and/or agents including Ms. Adamson;

      b.   Failing to train and/or properly train Ms. Adamson prior to allowing her to operate its Kenworth;

15

c.  Hiring and/or continuing to employ Ms. Adamson despite the fact that it knew or should have known that her violation of the FMCSA hours of service made her unfit to safely operate a commercial vehicle;

d.  Hiring and/or continuing to employ Ms. Adamson despite the fact that she had a propensity for driving violations;

e.  Hiring and/or continuing to employ Ms. Adamson despite the fact that she had a propensity for violating the "Rules of the Road" and FMCSR

f.  Failing to do preventable analysis as recommended by the FMSCR;

g.  Failing to have an appropriate disciplinary policy within the company;

h.  Hiring and/or continuing to employ Ms. Adamson despite the fact that it knew or should have known that her propensity to break the vehicular rules could and/or would put the driving public at risk;

i.  Permitting Ms. Adamson to operate its Kenworth when it knew or should have known that she was not properly qualified and/or trained;

j.  Allowing Ms. Adamson to operate tractor trailers in its possession when it knew or should have known that such operation posed a risk of danger to others lawfully on the roadway;

k.  Failing to adopt appropriate employee manuals and/or training procedures;

l.  Failing to enforce both written and unwritten policies of Defendants;

m.  Failing to ensure that its employees, drivers, and/or agents were aware of and complied with the written and unwritten policies of Defendants;

n.  Failing to implement and/or enforce an effective safety system;

o.  Failing to ensure that its management personnel and drivers were aware of the requirements and dictates of the FMCSA regulations;

p.  Failing to ensure that its employees, drivers, and/or agents complied with the provisions of the FMCSA regulations;

q.  Failing to ensure that its employees, drivers, and/or agents were aware of and complied with rules, laws and regulations pertaining to and governing the operation of commercial vehicles;

16

r.  Violating the applicable rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

s.  Failing to monitor and/or regulate the actions of its drivers;

t.  Failing to monitor and/or regulate the hours of its drivers;

u.  Failing to have an auditing system in place to audit its drivers' logs, or if a system is in place, failing to use it appropriately;

v.  Failing to use a 3rd party vendor to audit their drivers' logs, or if they did use a 3rd party vendor, failing to use it appropriately;

w.  Failing to have policy and mechanisms in place to address cumulative fatigue in its drivers;

x.  Placing more emphasis on profits than on safety of its drivers and the motoring public;

y.  Knowingly violating federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

z.  Failing to act upon and remedy violations of FMCSA regulation 383;

aa. Failing to act upon and remedy violations of FMCSA regulation 392.14 and the Uniform Commercial Driver's Manual;

bb. Failing to act upon and remedy violations of FMCSA regulation 395;

cc. Failing to act upon and remedy violations of FMCSA regulation 396.7;

dd. Failing to act upon and remedy violations of FMCSA regulation 396.9;

ee. Failing to act upon and remedy violations of FMCSA regulation 396.11;

ff.  Failing to act upon and remedy violations of FMCSA regulation 396.13;

gg. Failing to act upon and remedy violations of FMCSA regulation 396.17;

hh. Failing to act upon and remedy known violations of industry standards;

ii.  Acting in a conscious disregard for the rights and safety of the Plaintiff's Decedent;

jj.  Failing to have appropriate policies and procedures with regard to hiring of drivers;

kk. Failing to follow the written and/or unwritten policies and procedures with regard to hiring of its drivers;

ll. Failing to have appropriate policies and procedures with regard to monitoring of its drivers;

mm. Failing to follow the written and/or unwritten policies and procedures with regard to monitoring its drivers;

nn. Consciously disregarding federal and state law regarding responsibilities of motor carriers and the operation of commercial vehicles;

oo. Violating all applicable provisions of the FMCSA;

pp. Failing to suspend, discipline, or provide remedial training to Ms. Adamson prior to the Crash despite her history of unsafe driving practices; and

qq. Habitually and recklessly disregarding state and federal laws, regulations, and industry standards governing the safe hiring, training and retention of tractor trailer drivers, the safe operation of a motor carrier transporting goods in interstate commerce, and the safe operation of commercial motor vehicles that created a zone and culture of danger that constituted a dangerous mode of operation, which was reasonably anticipated to cause injury and death to the motoring public and created a danger to all motorists exposed to its unsafe commercial motor vehicle drivers like Ms. Adamson.

79. As a result of the above-stated acts and omissions, Plaintiff has suffered such harm as has been previously stated herein.

**WHEREFORE** Plaintiff, hereby seeks all damages allowed under the laws of the State of Ohio, including punitive damages, in an amount in excess of $75,000.

## COUNT V

## NEGLIGENT UNDERTAKING

## AMY L. PAPESH, AS ADMINISTRATOR OF THE ESTATE OF YUSUF A. EVANS, SR. v. FEDEX GROUND PACKAGE SYSTEM, INC.

80. The preceding paragraphs are incorporated herein as though fully set forth below.

81. FedEx Ground is subject to liability for the physical harm caused to third persons for its failure to exercise reasonable care to protect its undertakings.

82.     FedEx Ground had a contractual obligation to efficiently and safely transport goods in interstate commerce on March 18, 2022.

83.     FedEx Ground undertook, for consideration, a duty to render these services.

84.     FedEx Ground assumed an obligation to render transportation of goods in interstate commerce.

85.     FedEx Ground owed a duty of care to those third parties legally travelling on I-76, including the Decedent on the date and time of the crash.

86.     Upon information and belief, FedEx Ground knew that Ms. Adamson had a history of unsafe driving violations.

87.     By hiring a driver with a history of unsafe driving violations, such as Ms. Adamson, FedEx Ground knew that the likelihood of Ms. Adamson causing a crash increased exponentially.

88.     FedEx Ground failed to exercise reasonable care and increased the risk of harm in failing to adequately and safely transport goods on I-76 on March 18, 2022.

89.     Additionally, FedEx Ground undertook the performance of said duties and was negligent in its undertaking in the following ways:

   a. Failing to properly train, monitor, and/or supervise its employees, drivers and/or agents including Ms. Adamson;

   b. Failing to train and/or properly train Ms. Adamson prior to allowing her to operate its Kenworth;

   c. Hiring and/or continuing to employ Ms. Adamson despite the fact that it knew or should have known that her violation of the FMCSA hours of service made her unfit to safely operate a commercial vehicle;

   d. Hiring and/or continuing to employ Ms. Adamson despite the fact that she had a propensity for driving violations;

e. Hiring and/or continuing to employ Ms. Adamson despite the fact that she had a propensity for violating the "Rules of the Road" and FMCSR

f. Failing to do preventable analysis as recommended by the FMSCR;

g. Failing to have an appropriate disciplinary policy within the company;

h. Hiring and/or continuing to employ Ms. Adamson despite the fact that it knew or should have known that her propensity to break the vehicular rules could and/or would put the driving public at risk;

i. Permitting Ms. Adamson to operate its Kenworth when it knew or should have known that she was not properly qualified and/or trained;

j. Allowing Ms. Adamson to operate tractor trailers in its possession when it knew or should have known that such operation posed a risk of danger to others lawfully on the roadway;

k. Failing to adopt appropriate employee manuals and/or training procedures;

l. Failing to enforce both written and unwritten policies of FedEx Ground;

m. Failing to ensure that its employees, drivers, and/or agents were aware of and complied with the written and unwritten policies of FedEx Ground;

n. Failing to implement and/or enforce an effective safety system;

o. Failing to ensure that its management personnel and drivers were aware of the requirements and dictates of the FMCSA regulations;

p. Failing to ensure that its employees, drivers, and/or agents complied with the provisions of the FMCSA regulations;

q. Failing to ensure that its employees, drivers, and/or agents were aware of and complied with rules, laws and regulations pertaining to and governing the operation of commercial vehicles;

r. Violating the applicable rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

s. Failing to monitor and/or regulate the actions of its drivers;

t. Failing to monitor and/or regulate the hours of its drivers;

u. Failing to have an auditing system in place to audit its drivers' logs, or if a system is in place, failing to use it appropriately;

v.  Failing to use a 3rd party vendor to audit their drivers' logs, or if they did use a 3rd party vendor, failing to use it appropriately;

w.  Failing to have policy and mechanisms in place to address cumulative fatigue in its drivers;

x.  Placing more emphasis on profits than on safety of its drivers and the motoring public;

y.  Knowingly violating federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

z.  Failing to act upon and remedy violations of FMCSA regulation 383;

aa. Failing to act upon and remedy violations of FMCSA regulation 395;

bb. Failing to act upon and remedy violations of FMCSA regulation 396.7;

cc. Failing to act upon and remedy violations of FMCSA regulation 396.9;

dd. Failing to act upon and remedy violations of FMCSA regulation 396.11;

ee. Failing to act upon and remedy violations of FMCSA regulation 396.13;

ff.  Failing to act upon and remedy violations of FMCSA regulation 396.17;

gg. Failing to act upon and remedy violations of FMCSA regulation 392.71;

hh. Failing to maintain proper lighting devices or reflective material on its power unit in violation of FMCSA regulation 393.11;

ii.  Allowing a power unit to have inadequate brakes for safe stopping in violation of FMCSA regulation 393.47(a);

jj.  Failing to inspect, repair and maintain the power unit in violation of FMCSA regulation 396.3(a)(1);

kk. Failing to act upon and remedy known violations of industry standards;

ll.  Acting in a conscious disregard for the rights and safety of the Decedent;

mm.    Failing to have appropriate policies and procedures with regard to hiring of drivers;

nn. Failing to follow the written and/or unwritten policies and procedures with regard to hiring of its drivers;

oo. Failing to have appropriate policies and procedures with regard to monitoring of its drivers;

pp. Failing to follow the written and/or unwritten policies and procedures with regard to monitoring its drivers;

qq. Consciously disregarding federal and state law regarding responsibilities of motor carriers and the operation of commercial vehicles;

rr. Violating all applicable provisions of the FMCSA;

ss. Failing to suspend, discipline, or provide remedial training to Ms. Adamson prior to the Crash despite her history of unsafe driving practices; and

tt. Habitually and recklessly disregarding state and federal laws, regulations, and industry standards governing the safe hiring, training and retention of tractor trailer drivers, the safe operation of a motor carrier transporting goods in interstate commerce, and the safe operation of commercial motor vehicles that created a zone and culture of danger that constituted a dangerous mode of operation, which was reasonably anticipated to cause injury and death to the motoring public and created a danger to all motorists exposed to its unsafe commercial motor vehicle drivers like Ms. Adamson.

90.     As a result of the above-stated acts and omissions, Plaintiff has suffered such harm as has been previously stated herein.

**WHEREFORE** Plaintiff, hereby seeks all damages allowed under the laws of the State of Ohio, including punitive damages, in an amount in excess of $75,000.

<u>**COUNT VI**</u>

<u>**NEGLIGENT UNDERTAKING**</u>

<u>**AMY L. PAPESH, AS ADMINISTRATOR OF THE ESTATE OF YUSUF A. EVANS, SR.
v. FEDEX FREIGHT, INC.**</u>

91.     The preceding paragraphs are incorporated herein as though fully set forth below.

92.     FedEx Freight is subject to liability for the physical harm caused to third persons for its failure to exercise reasonable care to protect its undertakings.

22

93. FedEx Freight had a contractual obligation to efficiently and safely transport goods in interstate commerce on March 18, 2022.

94. FedEx Freight undertook, for consideration, a duty to render these services.

95. FedEx Freight assumed an obligation to render transportation of goods in interstate commerce.

96. FedEx Freight owed a duty of care to those third parties legally travelling on I-76, including the Decedent on the date and time of the crash.

97. Upon information and belief, FedEx Freight knew that Ms. Adamson had a history of unsafe driving violations.

98. By hiring a driver with a history of unsafe driving violations, such as Ms. Adamson, FedEx Freight knew that the likelihood of Ms. Adamson causing a crash increased exponentially.

99. FedEx Freight failed to exercise reasonable care and increased the risk of harm in failing to adequately and safely transport goods on I-76 on March 18, 2022.

100. Additionally, FedEx Freight undertook the performance of said duties and was negligent in its undertaking in the following ways:

   a. Failing to properly train, monitor, and/or supervise its employees, drivers and/or agents including Ms. Adamson;

   b. Failing to train and/or properly train Ms. Adamson prior to allowing her to operate its Kenworth;

   c. Hiring and/or continuing to employ Ms. Adamson despite the fact that it knew or should have known that her violation of the FMCSA hours of service made her unfit to safely operate a commercial vehicle;

   d. Hiring and/or continuing to employ Ms. Adamson despite the fact that she had a propensity for driving violations;

e.   Hiring and/or continuing to employ Ms. Adamson despite the fact that she had a propensity for violating the "Rules of the Road" and FMCSR

f.   Failing to do preventable analysis as recommended by the FMSCR;

g.   Failing to have an appropriate disciplinary policy within the company;

h.   Hiring and/or continuing to employ Ms. Adamson despite the fact that it knew or should have known that her propensity to break the vehicular rules could and/or would put the driving public at risk;

i.   Permitting Ms. Adamson to operate its Kenworth when it knew or should have known that she was not properly qualified and/or trained;

j.   Allowing Ms. Adamson to operate tractor trailers in its possession when it knew or should have known that such operation posed a risk of danger to others lawfully on the roadway;

k.   Failing to adopt appropriate employee manuals and/or training procedures;

l.   Failing to enforce both written and unwritten policies of FedEx Freight;

m.   Failing to ensure that its employees, drivers, and/or agents were aware of and complied with the written and unwritten policies of FedEx Freight;

n.   Failing to implement and/or enforce an effective safety system;

o.   Failing to ensure that its management personnel and drivers were aware of the requirements and dictates of the FMCSA regulations;

p.   Failing to ensure that its employees, drivers, and/or agents complied with the provisions of the FMCSA regulations;

q.   Failing to ensure that its employees, drivers, and/or agents were aware of and complied with rules, laws and regulations pertaining to and governing the operation of commercial vehicles;

r.   Violating the applicable rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

s.   Failing to monitor and/or regulate the actions of its drivers;

t.   Failing to monitor and/or regulate the hours of its drivers;

u.   Failing to have an auditing system in place to audit its drivers' logs, or if a system is in place, failing to use it appropriately;

24

v.  Failing to use a 3rd party vendor to audit their drivers' logs, or if they did use a 3rd party vendor, failing to use it appropriately;

w.  Failing to have policy and mechanisms in place to address cumulative fatigue in its drivers;

x.  Placing more emphasis on profits than on safety of its drivers and the motoring public;

y.  Knowingly violating federal and state law regarding the responsibilities of motor carriers and the operation of commercial vehicles;

z.  Failing to act upon and remedy violations of FMCSA regulation 383;

aa. Failing to act upon and remedy violations of FMCSA regulation 395;

bb. Failing to act upon and remedy violations of FMCSA regulation 396.7;

cc. Failing to act upon and remedy violations of FMCSA regulation 396.9;

dd. Failing to act upon and remedy violations of FMCSA regulation 396.11;

ee. Failing to act upon and remedy violations of FMCSA regulation 396.13;

ff.  Failing to act upon and remedy violations of FMCSA regulation 396.17;

gg. Failing to act upon and remedy violations of FMCSA regulation 392.71;

hh. Failing to maintain proper lighting devices or reflective material on its power unit in violation of FMCSA regulation 393.11;

ii.  Allowing a power unit to have inadequate brakes for safe stopping in violation of FMCSA regulation 393.47(a);

jj.  Failing to inspect, repair and maintain the power unit in violation of FMCSA regulation 396.3(a)(1);

kk. Failing to act upon and remedy known violations of industry standards;

ll.  Acting in a conscious disregard for the rights and safety of the Decedent;

mm.  Failing to have appropriate policies and procedures with regard to hiring of drivers;

25

nn. Failing to follow the written and/or unwritten policies and procedures with regard to hiring of its drivers;

oo. Failing to have appropriate policies and procedures with regard to monitoring of its drivers;

pp. Failing to follow the written and/or unwritten policies and procedures with regard to monitoring its drivers;

qq. Consciously disregarding federal and state law regarding responsibilities of motor carriers and the operation of commercial vehicles;

rr. Violating all applicable provisions of the FMCSA;

ss. Failing to suspend, discipline, or provide remedial training to Ms. Adamson prior to the Crash despite her history of unsafe driving practices; and

tt. Habitually and recklessly disregarding state and federal laws, regulations, and industry standards governing the safe hiring, training and retention of tractor trailer drivers, the safe operation of a motor carrier transporting goods in interstate commerce, and the safe operation of commercial motor vehicles that created a zone and culture of danger that constituted a dangerous mode of operation, which was reasonably anticipated to cause injury and death to the motoring public and created a danger to all motorists exposed to its unsafe commercial motor vehicle drivers like Ms. Adamson.

101.    As a result of the above-stated acts and omissions, Plaintiff has suffered such harm as has been previously stated herein.

**WHEREFORE** Plaintiff, hereby seeks all damages allowed under the laws of the State of Ohio, including punitive damages, in an amount in excess of $75,000.

## COUNT VII

### JOINT VENTURE/JOINT ENTERPRISE LIABILITY

### AMY L. PAPESH, AS ADMINISTRATOR OF THE ESTATE OF YUSUF A. EVANS, SR. v. FEDEX GROUND PACKAGE SYSTEM, INC. AND FEDEX FREIGHT, INC.

102.    The preceding paragraphs are incorporated herein as though fully set forth below.

103.    On the above referenced date, place and time, Defendants were engaged in a joint venture to haul goods and material in interstate commerce for profit.

104.    Upon and information and belief, Ms. Adamson was paid by all Defendants for this transportation, including allowances for fuel costs.

105.    Upon information and belief, Defendants are in contact through numerous means of communication, including, but not limited to, email, faxes, telephone, and mobile application to track status of shipment from origin to delivery.

106.    As a result of the transportation, Defendants earned, or intended to earn, a profit.

107.    Defendants agreed to a division of profits and/or losses for the transportation of the subject load.

108.    On the above referenced date, place and time, Defendants controlled the Kenworth through its duly authorized agent, servant, and/or employee, Ms. Adamson.

109.    On the above-referenced date, place and time, Ms. Adamson was performing a service for the benefit of Defendants, namely the transportation of goods for profit.

110.    Defendants were aware that Ms. Adamson was transporting the goods.

111.    Defendants had the right to control Ms. Adamson in performing this service.

112.    Defendants exercised this control over Ms. Adamson, inter alia, in the manner described fully herein.

113.    Defendants held out Ms. Adamson as an agent, servant, and/or employee such that a reasonable person would conclude that Ms. Adamson was an agent, servant, and/or employee of Defendants and they are vicariously liable for the acts and/or omissions of Ms. Adamson.

114.    As a direct and proximate cause of the above stated acts and omissions, Plaintiff suffered, inter alia, the serious, severe, permanent, and fatal injuries as has been previously stated herein.

27

**WHEREFORE** Plaintiff, hereby seeks all damages allowed under the laws of the State of Ohio, including punitive damages, in an amount in excess of $75,000, for its costs, legal fees and for such further relief as the Court deems just and proper.

Respectfully Submitted,

**THE WALLACE FIRM, PLLC**

_____
Christopher Wallace, Esq. (65561)
The Wallace Firm, PLLC
3350 Pennsylvania Avenue, Suite B
P.O. Box 2100
Weirton, WV 26062
T: (855) 530-9300
cwallace@wallace-firm.com

Steven Barth, Esq.*
Barth Rovnan, LLC
116 Blvd. of the Allies
Pittsburgh, PA 15222
T: (412)713-5786
smb@brtrialteam.com

Edward Ciarimboli, Esq.*
Fellerman & Ciarimboli Law, PC
183 Market Street, Suite 200
Kingston, PA 18704
T: (800)513-8941
ejc@fclawpc.com

Job Stepanski, Esq.*
Fellerman & Ciarimboli Law, PC
183 Market Street, Suite 200
Kingston, PA 18704
T: (800)513-8941
jstepanski@fclawpc.com

*Counsel for Plaintiff*

*Application for admission *Pro Hac Vice* forthcoming

## JURY DEMAND

A trial by jury is hereby demanded in this action.

_____
Christopher Wallace, Esq. (65561)
The Wallace Firm, PLLC
*Counsel for Plaintiff*